Richard WATERMAN, et al., Plaintiffs,

v.

Peter VERNIERO, et al., Defendants.

No. Civ.A. 98–1398.

United States District Court,
D. New Jersey.

July 22, 1998.

Lawrence S. Lustberg, Mark A. Berman, Laura K. Abel, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Plaintiffs.

Ronald L. Bollheimer, Deputy Attorney General, Trenton, NJ, for Defendants.

## *OPINION*

WOLIN, District Judge.

On June 29, 1998, the Court preliminarily enjoined New Jersey from enforcing N.J.S.A. 2C:47–10, which prohibits inmates at the Adult Diagnostic and Treatment Center ("ADTC") from possessing or obtaining "sexually oriented materials," because Richard Waterman and Michael Curtis ("plaintiffs"), who are inmates at the ADTC, had shown that they were likely to succeed on the merits, that they would suffer irreparable harm if the Court did not issue the injunction, that New Jersey would not be injured if the Court issued the injunction, and that the public interest weighed in favor of plaintiffs. The Court must now determine whether N.J.S.A. 2C:47–10 is constitutionally infirm.

The Court reiterates that it is sensitive to society's concern and interest in defending against and punishing sex offenders. Moreover, the Court is cognizant of the public outrage that the preliminary injunction created. The Court's disapprobation of this statute, however, flows from its duty to uphold

the Constitution, which protects all citizens, including convicted felons. History teaches that when society stands idly by as the state violates the rights of one segment of the body politic, the rights of others will eventually be diminished. The flashback of Pastor Martin Niemueller, a Protestant anti-Nazi who was imprisoned in a concentration camp during the war, exemplifies the currency of this principle:

> First they came for the Socialists and I did not speak out because I was not a Socialist;
>
> Then they came for the trade unionists and I did not speak out because I was not a trade unionist;
>
> Then they came for the Jews and I did not speak out because I was not a Jew;
>
> Then they came for me and there was no one left to speak for me.[1]

If this statute is worthy of retention and serves a valid penological interest, then the New Jersey Legislature has the duty to enact it so that it comports with the Constitution.

The Court will permanently enjoin New Jersey from enforcing N.J.S.A. 2C:47–10 because New Jersey has not overcome the insurmountable burdens discussed in the Court's initial Opinion. Furthermore, the Court has determined that plaintiffs' experts' opinion that psychologists should assess the effect of sexually oriented materials on the treatment of the inmates at the ADTC on a case-by-case basis is a more reasonable approach for dealing with the materials than is N.J.S.A. 2C:47–10.

## I. Standard for Permanent Injunction

Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, district courts are permitted to consolidate a hearing for a preliminary injunction with the trial on the merits. In this case, New Jersey and plaintiffs have informed the Court that they are willing to rely on their written submissions and that a trial is unnecessary for the adjudication of this case. Thus, according to the parties' decision to forego a trial and Rule 78 of the Federal Rules of Civil Procedure, this Court

will decide this case without a trial or oral arguments.

For the Court to issue a permanent injunction, plaintiffs must: (1) succeed on the merits, (2) establish that they will be irreparably injured if the Court does not issue the injunction, (3) show that the issuance of the permanent injunction will not cause greater harm to the defendant, and (4) demonstrate that the injunction is in the public interest. *SeeCIBA–GEIGY Corp. v. Bolar Pharm. Co., Inc.*, 747 F.2d 844, 850 (3d Cir.1984) ("In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy.").

At the outset, the Court notes that it will not revisit the facts or all of the arguments and issues raised in its initial Opinion because this Opinion serves as a supplement to the earlier Opinion.

## II. Legal Analysis

### A. Success on the Merits

#### 1. Overbreadth and Vagueness

In the initial Opinion, the Court stated that "New Jersey's burden on [overbreadth and vagueness] appears to be insurmountable given the Court's analysis and the static nature of N.J.S.A. 2C:47–10's language." New Jersey has not done anything to persuade the Court that its discussion on the overbreadth and vagueness of N.J.S.A. 2C:47–10 was incorrect or should be changed. As currently written, N.J.S.A. 2C:47–10 sweeps far too broadly because it prohibits plaintiffs from reading the Bible, fashion magazines, books, legal documents, and sections of newspapers. In addition, the statute is vague because it fails to define "associated anatomical area." That phrase indicates that the statute bans the inmates from possessing or obtaining materials describing or depicting sexual activities from kissing to intercourse. Thus, the Court finds that N.J.S.A. 2C:47–10 is unconstitutional because it vio-

---

1. The Court acknowledges that Steve Luckert, the Curator of the Permanent Exhibition at the Holocaust Museum, provided this Court with Niemueller's statement.

lates the principles of overbreadth and vagueness.

## 2. Penological Interest

 To establish a reasonable relationship, a state must have a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987). Although the Court need not address whether New Jersey had a valid penological interest when it passed N.J.S.A. 2C:47–10, it will briefly discuss the issue because the parties have hotly contested the issue and because the Court's analysis may aid the New Jersey Legislature if they decide to rewrite the statute.

As stated in the prior Opinion, New Jersey contends that sexually oriented materials will disrupt its treatment of the sex offenders at the ADTC. Thus, New Jersey argues that rehabilitating sex offenders is a valid penological interest. Plaintiffs vehemently counter that New Jersey does not have a legitimate penological interest because sexually oriented materials may aid their treatment by helping them refocus their deviant sexual desires to normal sexual wants.

New Jersey did not have a valid penological interest when it enacted N.J.S.A. 2C:47–10 because rehabilitation does not appear to be the true reason why the New Jersey Legislature passed N.J.S.A. 2C:47–10. The legislative history does not mention rehabilitation, and Dr. Nancy Graffin, the Director of Psychology at the ADTC, did not testify before either the Assembly or Senate, and learned about the statute after it was enacted. Most importantly, the Department of Corrections formally opposed the statute before Governor Whitman signed it because the Department believed that adult pornography for inmates at the ADTC was a step in the right direction. Thus, the true reason for the enactment of N.J.S.A. 2C:47–10 appears to be public outrage over some of the hei-nous, pedophiliac crimes that occurred in New Jersey.

Moreover, although the Court recognizes that rehabilitation is a valid penological interest, no rational relationship exists between N.J.S.A. 2C:47–10 and rehabilitation. The experts in this case disagree on the effect that the materials will have on the treatment of the inmates at the ADTC. For the reasons stated *infra*, the Court finds that plaintiffs' experts are more convincing.

New Jersey's experts include the current Director of Psychology at the ADTC, Dr. Graffin, and a psychologist who works with sex offenders in Philadelphia, Dr. Timothy Foley. Graffin opines that sexually oriented materials hinder the treatment of the inmates at the ADTC because they will interfere with the concept of victim empathy and the sex offenders' understanding of deviant sexual behavior. She adds that the materials will lead inmates to "normalize the objectification of others," which is contrary to the treatment the ADTC espouses. Foley asserts that empirical studies show that sexually oriented materials advance sexual offenders' masturbatory fantasies, and may prevent them from finding alternative outlets to their deviant behavior. Both of New Jersey's experts received their Ph.D.s in the last ten years.

Plaintiffs' first expert is Dr. Philip Witt, who has treated sex offenders for twenty years, ten of which were for the ADTC, five of which were as the Director of Psychology. He claims that N.J.S.A. 2C:47–10's prohibition on sexually oriented materials will do a disservice to certain inmates because psychologists must evaluate how such materials will affect sex offenders on a case-by-case basis. Witt explains that the materials may harm some inmates, have no effect on others, and benefit others. He adds that sexually oriented materials have been used to treat pedophiles for twenty years because the materials can help refocus pedophiles' deviant sexual behavior. Finally, plaintiffs proffer Dr. Carol Ball, who received her Ph.D. twelve years ago and currently works in private practice with, among others, deviant and compulsive sex offenders. Ball currently uses sexually oriented materials with her pa-

tients because they are critical to the normalization of sex offenders' sexual interests. Like Witt, she believes that psychologists should make the determination whether sexually oriented materials will hinder or aid the treatment of sex offenders on a case-by-case basis.

After reviewing the experts' affidavits, the Court finds that the psychology field has not yet reached an agreement on how sexually oriented materials affect the treatment of sex offenders. Although the Court is not equipped to resolve that issue, it has determined that plaintiffs' experts are more convincing because their position is more reasonable. Given the disagreement in the psychology field on this issue, it seems most appropriate for psychologists to determine whether to use such materials on a case-by-case basis. On the other hand, flatly prohibiting such materials, as N.J.S.A. 2C:47–10 proposes to do, would deny certain sex offenders valuable treatment. Thus, N.J.S.A. 2C:47–10 actually diminishes New Jersey's purported interest in rehabilitation. The Court concludes that the statute is not rationally related to rehabilitation because plaintiffs' experts' recommendation that the materials be reviewed on a case-by-case basis is a better method for handling the materials than that provided by the statute and New Jersey's experts.[2]

### B. Irreparable Harm, Harm to New Jersey, and Public Interest

■ If the Court does not issue a permanent injunction against New Jersey, plaintiffs' right to free speech under the First Amendment will be chilled because they will be subject to on the on-the-spot sanctions if they violate N.J.S.A. 2C:47–10. Thus, those sanctions and the chilling effect they will have amount to irreparable harm. In addition, the Court finds that an injunction will not injure New Jersey because the depiction of sexually oriented materials has been permitted since 1976 without any documented harm and because plaintiffs have shown that the materials may assist their treatment. Finally, the public interest also weighs in

plaintiffs' favor because N.J.S.A. 2C:47–10 may actually have an adverse effect on the rehabilitation of the inmates at the ADTC. The public cannot have an interest in a statute that hinders rehabilitation. Thus, plaintiffs have established that the other three factors to be considered on an application for a permanent injunction weigh in their favor.

### III. Conclusion

From the onset of this litigation, this Court has been acutely aware of the public resentment and indignation our society harbors toward predatory sex offenders. Such societal anger is not misplaced because those offenders wreak havoc on society and drastically alter individual lives. The New Jersey Legislature's attempt to patronize this anger for political purposes with the enactment of N.J.S.A. 2C:47–10, however, fails to pass constitutional muster.

We, as a community, imprison offenders for our protection. Proscription on thoughts and ideas, however, falls outside that protective cloak, a concept not lost on the framers of the Constitution. The right to freedom of expression transcends prison walls and any constraint on such freedom must be consonant with the principles that support the right.

There are occasions when the application of constitutional rights will protect a disfavored minority of society to the consternation of the vocal majority. Nonetheless, the Constitution is the lifeblood of our country, and this Court has a sworn duty to uphold the Constitution against all competing interests. Arbitrary enforcement of the Constitution debases its purpose and diminishes the protections it provides to all citizens. Thus, denial of a right or privilege to a citizen is a denial of that right or privilege to every citizen.

Here, the fault lies not with the prisoners who seek freedom of expression, but with an ill-considered and ill-conceived law that deprives them of that freedom. A law born in haste merits an equally speedy demise.

---

**2.** The Court notes that it will not address the other factors articulated in *Turner* because the

ruling that New Jersey does not have a legitimate penological interest renders those factors moot.

Accordingly, this Court will permanently enjoin New Jersey from enforcing N.J.S.A. 2C:47–10.

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 22d day of July, 1998

ORDERED that the State of New Jersey is permanently enjoined from enforcing N.J.S.A. 2C:47–10; and it is further

ORDERED that this case is dismissed.